CHARLES CARREON (127139)
3241 East Blacklidge Drive
Tucson, Arizona 85716
Tel: 628-227-4059
Attorney for Plaintiff Tara Lyn Carreon

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA LYN CARREON,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>ED F. EDWARDS AND SUSAN L. EDWARDS,<br><br>　　　　Defendant. | Case No. _ 2:19−CV−01879−TLN−EFB<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. DECLARATORY RELIEF<br>2. QUIET TITLE<br>3. RESCISSION<br>4. MONEY HAD AND RECEIVED |

　　　　For her complaint against defendants ED F. EDWARDS and SUSAN L. EDWARDS ("Sellers" or "Defendant"), citizens of Oregon, arising out of the sale of real property in Shasta County, California, to plaintiff TARA LYN CARREON ("Buyer" or "Plaintiff"), a citizen of Arizona, Plaintiff alleges as follows:

## THE PARTIES

1.　　At the time of the transactions alleged herein, Plaintiff has been a resident of Tucson, Pima County, Arizona. She is the buyer in the real estate transaction that is the subject of this action.

2.　　Defendants, the sellers in the real estate transaction, are recorded in U.S. Postal Service records as residents of Shasta County, Redding, California. On information and belief, Defendants may also have resided or reside in Josephine County, Oregon.

3.　　The real property at issue is located in Shasta County, California. This dispute focuses on 1.8 acres of land on Delta School Road north of Lakehead, California 96051,

Shasta County Assessor's Parcel # 019-390-063, legally described in Exhibit A of Exhibit 1 hereto, herein, the "Property."

## SUBJECT MATTER JURISDICTION

4. The parties are diverse, the amount in controversy is in excess of $ 75,000, and thus, this Court has jurisdiction over the action pursuant to 28 U.S.C. §1332.

## VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the Property is within the Eastern District of California.

## FACTS

6. On or about May 27, 2015, Buyer agreed to purchase the Property on the terms set forth in the Mutual Purchase Sale Agreement (the "Putative Contract" attached as Exhibit 1). The mutual consent necessary to the formation of an enforceable contract between Buyer and Sellers was vitiated by material misrepresentations Sellers made to Buyer and her agent to induce Buyer to purchase the Property despite known defects and encumbrances making it unsuitable for Plaintiff's declared intention to establish a legal residence on the Property immediately after purchase.

7. Based on oral negotiation of the terms of the Putative Contract, Defendant Ed Edwards knew that it was essential to Plaintiff's purpose that there be no serious code-enforcement obstacles to development, such as prior nuisance uses and/or orders forbidding the use of well-water on the land, because Plaintiff had a solid move-out date for the home she was vacating in Tucson, and needed to set up new housing on the Property, which would be facilitated by the presence of the three essentials – road, water and power. The Property appeared to have all three. In order to identify hidden defects, disabilities, or encumbrances, Seller-Defendants affirmed the availability of a functioning, legally-usable water well, and purported to disclose all prior nuisance activity, in the Putative Contract signed by Seller-Defendants.

8. The Putative Contract represented that a 7.5 gallon per minute well had been drilled on the property, cased, outfitted with a pump, and permitted for residential use.

FIRST AMENDED COMPLAINT

2

The Putative Contract did not disclose any order from Shasta County precluding use of the well to supply water for the Property.

9. In the Putative Contract, Defendants represented that the land had never been used for nuisance activities. "The Property does not have any of the following known problems ... neighborhood noise problems or other nuisances...." Exhibit 1, ¶ 5.b.

10. The above representations were false. In truth in fact the prior occupant had been farming marijuana illegally, a statutory nuisance in Shasta County.[1]

11. Plaintiff would not have bought the Property if she'd known the Property had been the site of an illegal, nuisance marijuana grow. She would have been deterred entirely from buying the Property by fear of the legal barriers to full use of the Property.

12. If Plaintiff had known the true facts about the nuisance marijuana grow and the Water Shutoff Order, she would have declined to buy the Property, because of its unsuitability as a place to build a home for lack of water and the order forbidding all residency, and because living where past criminal activity occurred raises security risks, reduces property values, and inhibits transferability. Known risks arising from past criminal activity are that criminals return to their former hangouts, police monitor criminal operations and locations, and new occupants can become the focus of investigative or enforcement efforts. Thus, in addition to the economic disincentives, Plaintiff would have declined to buy the Property for security reasons. The concealment of the nuisance marijuana grow and its numerous code enforcement ill-consequences made the Property virtually unsaleable, and at minimum resulted in a substantial financial overvaluation of the Property.

13. Unaware of Defendants' misrepresentations, concealments and deceptive partial disclosures, Buyer agreed to an inflated price of $79,000 for the Property, signed Exhibit 1 and paid Sellers a $16,000 down payment. In addition to Exhibit 1, Plaintiff signed a

---

[1] Marijuana growing has been and is a statutory nuisance pursuant to Section 17.88.320 of the Shasta County Code, providing that "Cultivation of marijuana plants ... not in conformance with the provisions of this Section [is] a public nuisance that may be abated in accordance with [any and all] means available by law." (S.C.C. Sec. 17.88.320, subsection D.)

Deed of Trust with Assignment of Rents, securing an All Inclusive Promissory Note (Exhibit L to Exhibit 1) for $63,000, at interest, with payments of $315/month commencing May 19, 2015 and continuing each 19th of the month thereafter.  Plaintiff granted the Deed of Trust based upon the same deception that had induced her to sign Exhibit 1, make the down payment, and make four monthly payments of $315/month in May, June, July, and August of 2015.

14.     Sellers paid $17,260 out of pocket before discovering Defendants's deceptions.

15.     Plaintiff discovered the truth about the Property on or about September 21, 2015 when Plaintiff's agent, present on the Property, encountered a code enforcement officer who arrived in haste and somewhat of an agitated state, put out that Sellers were occupying the Property while in the middle of a very serious code enforcement due to discovery of an illicit nuisance marijuana grow on the Property.  The grow had been reported to Shasta County by a peace officer from another California county who owns an adjacent property, and had been bitten by a dog kept by the growers.  As part of the enforcement process, the County had basically shut down the Property for all use.  Defendant Ed Edwards had been served with a notice of violation, and Code Enforcement personnel had notified Defendant in writing that the water pump could not be used, the well must be welded shut (the "Water Shutoff Order"), and no one was allowed to reside on the property.  Code enforcement also had ordered an outbuilding demolished for lack of a required permit that Sellers had represented required no permit, and ordered remediation of disturbed soil.   Buyer was entirely ignorant of these material facts until on or about September 21, 2015.

16.     Sellers represented that the Property had a well "that was drilled as required by law and has been ... permitted for residential and commercial use ... tested and determined to produce 7.5 GPM."

17.     Sellers knew this representation would mislead Plaintiff into thinking she would have water to build a home, a belief they wished to cultivate; accordingly, they concealed the fact that the presence of water in the well and the residential permit were nullified

FIRST AMENDED COMPLAINT
4

when Shasta County ordered them to "remove well pump and weld a cap on top," making it permanently unusable.  The order was set forth in a Notice of Inspection issued on June 3, 2015 by Shasta County Code Inspector "MP," Badge # 916.  Sellers had a duty to disclose the County's Water Shutoff Order, because it nullified the legal significance of the documents attesting to the water flow and the residential permit.

18.     Sellers represented that there were two structures on the property that could be lawfully used, as they were ostensibly properly placed, and below the size for which a building permit is required.  (Exhibit 1, ¶ 10.a.)

19.     In truth and in fact, one structure was larger than the exempt structure size, and thus required a building permit; further, the two structures were closer together than is permissible , even for exempt structures.  On June 3, 2015, Shasta County Code Inspector, "MP," Badge # 916, ordered Sellers to demolish or get a permit to alter one building, and increase the distance between the two structures.  Without Buyer's knowledge, after the Property changed title, Seller tried to move the smaller structure, and completely destroyed its foundation and uprights.

20.     Buyer's agent discovered the misrepresentations on or about September 21, 2015, when he went to the Property, and was working to test the flow of the well.  While Buyer's agent was present on the property, a Shasta County Code Enforcement Officer appeared, and angrily chastised Buyer's agent for not having remediated the property as required by the June 3, 2015 Notice of Inspection.  Specifically, the Code Enforcement Officer stated that the well had to be sealed with a welded cap, that the well water absolutely could not be used on the property, that the buildings needed to be demolished, and that no use of the property for any period of habitation whatsoever was permitted.

21.     Buyer was shocked to learn the true facts that Sellers had concealed from her to induce her to buy the Property.  Buyer notified Sellers that she was rescinding the Putative Contract for misrepresentation and mistake, and would make no further payments.

22. Buyer's agent met with Ed Edwards on or about January 6, 2016, in an effort to resolve the matter, and tendered a draft agreement for rescission by consent for Sellers' signature in January 2016. Sellers declined to grant their consent to a rescission.

23. Upon discovering the deception, Plaintiff ended monthly payments on the All-Inclusive Note. In January 2016, Plaintiff's agent and Defendant Ed Edwards met and discussed entering into a rescission. On or about March 16, 2016, Plaintiff tendered a draft Mutual Rescission of Land Sale Agreement for Defendants' signature that included a schedule of performance to unwind the transaction. Defendants did not consent to rescission. Buyer has made no further payments since her agent's discovery of the fraud and concealments on September 21, 2015, thus giving Defendants notice of breach and rescission, and Sellers have taken no legal action within four years to enforce the Putative Contract and its sub-agreements, the All-Inclusive Note and the Deed of Trust; wherefore, Defendant's claims otherwise assertable herein are time-barred or subject to dismissal on grounds of laches.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief Against Defendants

### 28 U.S.C. §§ 2201 and 2002

24. Plaintiff repeats and realleges each and every fact set forth herein as if set forth in full hereat.

25. An actual controversy now exists between Plaintiff and Defendants, because:

26. Plaintiff contends that the Putative Contract, the Deed of Trust and the $63,000 Note are unenforceable, void for fraud in the inducement or negligent non-disclosure of material facts and subject to rescission, that enforcement of the $63,000 Note is time-barred, and that enforcement of the Deed of Trust is barred by estoppel, laches and unclean hands.

27. Plaintiff further contends that Defendants have slept on their rights. Cal. Civil Code § 3527.

28. Defendants dispute Plaintiff's contentions.

FIRST AMENDED COMPLAINT
6

29. A justiciable controversy has arisen between the parties.

30. An actual dispute has arisen between Plaintiff on the one hand and Defendants on the other.

31. The controversy is of sufficient immediacy and reality to warrant declaratory relief under 28 U.S.C. § 2201

32. Plaintiff prays a decree (1) finding that Defendants fraudulently or by culpable, negligent non-disclosure of material facts, induced Plaintiff to sign the Putative Contract, the Deed of Trust and the $63,000 All-Inclusive Note, (2) holding the same unenforceable, cancelling the All-Inclusive Note, and rescinding all contractual documents and agreements as defectively-formed instruments, and (3) enjoining Defendants from taking any action to enforce claims based thereon.

33. Additionally, Plaintiff prays for a preliminary decree appointing the Plaintiff or her counsel a judicially-appointed trustee to sell the Property, hold the funds in escrow, and distribute the same pursuant to Court Orders.

34. Plaintiff further prays a money judgment against Defendants pursuant to the attorneys fees and costs provisions of the Deed of Trust (Page 12 of Exhibit H to Exh. 1, the Putative Contract).

## SECOND CLAIM FOR RELIEF

**To Quiet Title to Real Property (Cal. Code of Civil Procedure § 760.010, *et seq.*)**

**Against Defendants**

35. Plaintiff realleges and incorporates each and every allegation contained herein as if fully set forth hereat.

36. The Property is located in Shasta County, California, within this Judicial District.

37. The Deed of Trust with Assignment of Rents and the All Inclusive Promissory Note cast a cloud on Plaintiff's title to the Property, causing Plaintiff to lose control thereof, and diminishing its value by encumbering its title without lawful cause.

38. Wherefore, having no remedy at law, Plaintiff is entitled to a decree clearing title of the Property of all clouds and establishing clear title in Plaintiff.

39. Plaintiff further prays a money judgment against Defendants pursuant to the attorneys fees and costs provisions of the Deed of Trust.

### THIRD CLAIM FOR RELIEF

### Rescission, Against Defendants

40. Plaintiff realleges and incorporates each and every allegation contained herein as if fully set forth hereat.

41. The facts recited in ¶¶ 6 - 23, alleging Defendants' deceit by affirmative misstatements, non-disclosures, and partial, selective disclosure are re-alleged here as if fully set forth.

42. Defendants' intent, in making the affirmative misstatements, non-disclosures, and partial, selective disclosures, was to induce Plaintiff to sign the Putative Contract, the Deed of Trust, and the All-Inclusive Note.

43. As alleged in ¶ 23, the Defendants received unambiguous notice of rescission from Plaintiff, sat down to negotiate a rescission, and rejected the proposed voluntary mutual rescission agreement and return of consideration tendered by Plaintiff.

44. Defendants have made no move to enforce the Putative Contract or its subsidiary agreements since receiving unambiguous notice of rescission and tendered return of consideration.

45. Wherefore, Plaintiff prays that the Putative Contract and all its subsidiary agreements, including the Deed of Trust and the All-Inclusive Note, be rescinded.

46. Plaintiff further prays a money judgment against Defendants pursuant to the attorneys fees and costs provisions of the Deed of Trust.

### FOURTH CLAIM FOR RELIEF

### Money Had and Received

47. Plaintiff realleges and incorporates each and every allegation contained herein as if fully set forth hereat.

48. The amount of money had and received by Defendants for the benefit of Plaintiff totals not less than $17,260, due to the failure of consideration due from Sellers.

FIRST AMENDED COMPLAINT
8

49.     As alleged in ¶ 24, Plaintiff made demand upon Defendants for return of the sum of $17,260, which they have refused.

50.     Wherefore the amount of not less than $17,620 was had and received by Defendants for the benefit of Plaintiff.

51.     To avoid unjust enrichment of the Defendants, Plaintiff prays return of the sum of $17,620, with prejudgment interest from May 27, 2015, the date of the Putative Contract.

52.     Plaintiff further prays a money judgment against Defendants pursuant to the attorneys fees and costs provisions of the Deed of Trust.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

53.     ON THE FIRST CLAIM FOR RELIEF:  For a decree (1) finding that Defendants fraudulently or by culpable, negligent non-disclosure, induced Plaintiff to sign the Putative Contract, the Deed of Trust and the $63,000 All-Inclusive Note, (2) rescinding the defectively-formed instruments and cancelling the All-Inclusive Note, (3) enjoining Defendants from taking any action to enforce claims based thereon; and, (4) for a money judgment against Defendants for payment of Plaintiff's costs and attorneys fees under Civil Code § 1717.  For a preliminary decree appointing Plaintiff trustee to sell the Property, hold funds received from sale in escrow, and disburse the funds in compliance with the judgment entered herein.

1)      ON THE SECOND CLAIM FOR RELIEF:  For a decree clearing Plaintiff's title to the Property from all clouds and establishing clear title in Plaintiff; and, for a money judgment against Defendants for payment of Plaintiff's costs and attorneys fees under Civil Code § 1717.

2)      ON THE THIRD CLAIM FOR RELIEF:  For a decree that the Putative Contract and all its subsidiary agreements, including the Deed of Trust and the All-Inclusive Note, are rescinded; and, for a money judgment against Defendants for payment of Plaintiff's costs and attorneys fees under Civil Code § 1717.

3)      ON THE FOURTH CLAIM FOR RELIEF:

a) For money judgment against the Defendants $17,260;

b) For prejudgment interest pursuant to Cal. Civil. Code § 3288;

c) For costs and attorneys fees pursuant to Cal. Civil Code § 1717;

4) ON ALL CLAIMS FOR RELIEF:

a) For costs and attorneys fees pursuant to Cal. Civil Code § 1717;

b) For such other and further relief as the Court deems to be just and equitable.

Dated: November 26, 2019

CHARLES CARREON,
ATTORNEY AT LAW

By: s/Charles Carreon
CHARLES CARREON (127139)
Attorney for Plaintiff Tara Carreon

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims properly presentable to a jury for determination.

Dated:  November 26, 2019                     CHARLES CARREON,
                                              ATTORNEY AT LAW

                                              By:/s/Charles Carreon
                                              CHARLES CARREON (CSB #127139)
                                              Attorney for Plaintiff
                                              Tara Lyn Carreon